ABELT, PLAINTIFF, *v.* ZEMAN, A. K. A. ELAINE ZEMAN ABELT, Defendant.

Common Pleas Court, Cuyahoga County.

No. 734584. Decided January 10, 1962.

*Mr. Charles L. Livingstone* and *Mr. William R. Brofman,* for plaintiff.

*Messrs. Tosko, Shields & Associates (William Shields),* for defendant.

JACKSON, J. On April 17, 1961, this Court had before it the instant case and the case of *Abelt* v. *Abelt,* No. 734,631. The cases were before the Court by reason of the filing of motions to strike, advance and consolidate. At that time, the Court wrote and filed in those cases a rather extensive memorandum of opinion which in substance set the instant case for trial and limited the trial to one issue. The issue which was to be tried was whether or not the plaintiff was under duress when he entered into the marriage with the defendant at Mercer, Pa.

The trial of this case went forward and a considerable amount of testimony was given. At the end of the testimony, the Court announced to counsel that it was of the opinion that the plaintiff, Raymond Abelt, was not under duress nor fear when he entered into the marriage. The testimony had set forth the facts that the parties knew each other before the plaintiff was married; that after the plaintiff was married the defendant continued to see him; that they had an extremely intimate relationship, that the plaintiff's father and wife tried to break up the relationship and told the family of the defendant of plaintiff's marriage and defendant's interference therewith; that the plaintiff thereafter told the defendant he was divorced; that she asked for no further proof of his statement; that the defendant became pregnant, and that thereafter the plaintiff and the defendant attempted to marry several times in Indiana and once in Pennsylvania, and that each time they were unsuccessful because of age considerations. The father of the defendant continued to vigorously urge them to be married. Finally, the plaintiff and the defendant and the parents of the defendant went to Mercer, Pennsylvania, and procured a marriage license and the parties were married. After the marriage ceremony the parties returned to Cleve-

land and the plaintiff and the defendant went their separate ways. On one or two occasions the plaintiff either introduced himself or was introduced to relatives of the defendant as her husband but both parties were in agreement that there never was any cohabitation after the marriage ceremony.

In arriving at its conclusion that there was no duress, the Court has been influenced by the case of *Willits* v. *Willits*, 107 N. W., 3679. In that case the plaintiff and the defendant were in much the same situation except that the husband did not have a wife at the time the marriage was entered into. In that case as in the instant case, the husband claimed that the girl's father accused him of being the father of an unborn child and threatened him with bodily injury unless he contracted marriage with the defendant, and that he believed he was in great danger of death, bodily injury, etc.; and that by reason of such fears and influenced by them, he was then and there induced to marry. In general, the plaintiff in the instant case has unsuccessfully attempted to show those same things. In both cases the parties alleged their minority.

The Court will now quote directly from the case of *Willits* v. *Willits, supra,* and this quotation from that case is, in substance, the finding of this Court in the instant case:

"The court made no finding on the question of duress and while it is quite clear from the evidence that the defendant, in contracting the marriage was influenced somewhat by fears of a prosecution for bastardy, its fears were born rather of a consciousness of guilt than by any threats made by the plaintiff's father. In other words, we think the evidence justifies a finding that the defendant contracted the marriage in the hope of escaping a prosecution for bastardy and not because of any fears of the plaintiff's father or other relatives."

The Court having come to its conclusion relative to duress, then announced that the pleadings had raised the question of minority of the plaintiff and that because of the fact the Court had heard evidence from both parties during the trial on the issue of duress, that there had been no cohabitation, the Court felt it still had a question as to the voidability of the marriage before it, 35 Am. Jur., 246, Marriage, No. 104. The Court had originally limited the issue to duress as it understood that

there had been cohabitation after the marriage ceremony. The Court then heard further arguments and permitted the filing of briefs on this question.

It has been held in the case of *Pearlman* v. *Pearlman*, 27 O. N. P. (N. S.), that a marriage between persons under the legal age of 21 years but over the common law age of consent is not void but only voidable. In that case it was further held that where the minors over the common law age of consent enter into a marriage contract and the marriage is consummated by cohabitation, then the marriage will be held valid notwithstanding the failure of the parents of the minor to consent to such marriage. Thus, the *Pearlman case, supra*, and other cases hold that the purpose of the requirement of the consent of the parents is to prevent minors from entering into marriages but will not invalidate them after they have been solemnized without the consent of the parents, 35 Ohio Jurisprudence (2d), 545, Marriage, No. 52.

Our Ohio Supreme Court has also spoken on this question and in the second syllabus of *Holtz* v. *Dick*, 42 Ohio St., 23, the Court has held that even though a wife is less than 16 years of age when she enters into the marriage, the same becomes irrevocable by cohabitation at the time or that she may ratify the marriage after she becomes of age, and that she may also ratify the marriage in other ways as by letters to her spouse addressing him as her husband.

In the instant case under the facts as given from the lips of both witnesses, this Court must find and does find that there was no cohabitation. The Court further finds that Raymond Abelt was not ratifying the marriage by permitting himself to be called the husband of Elaine before her relatives but rather was protecting her from embarrassment by reason of her pregnancy. The Court, therefore, finds that the marriage contract between the parties has not been consummated by cohabitation and has not been ratified by the parties after they reached the age of majority, or, in fact, at any time, and that therefore the plaintiff is entitled to the annulment prayed for in his petition.

The Court has been requested by the plaintiff to immediately enter a final order granting the annulment and dis-

missing the case of *Elaine Abelt* v. *Raymond Richard Abelt*, No. 734,631, which is the action for divorce, alimony and support. The Court is not so inclined. In the instant case the Court finds in the answer of the defendant she has alleged that a child, Lawrence Stephen Abelt, has been born as an issue of this marriage. The plaintiff has filed no reply to this allegation but has denied the paternity of the child through his attorney throughout the hearings in this case. Further, the attorney for the plaintiff has claimed that the court has no jurisdiction in this the annulment action to make any orders relative to this child. The Court finds that the law is otherwise and that in an annulment action, the Court may make an order relative to the custody and support of a child born during the period when the parties were purportedly married, 35 Ohio Jurispudence (2d), 556, Marriage, No. 62. The Ohio Jurisprudence citation just given relies primarily on the case of *Conley* v. *Conley*, 28 Ohio Opinions, 289. In that case the parties' sole purpose of marrying was to legitimatize the child to be born to them. The Court in its opinion found that by reason of Section 10503-15 and 11987, General Code, Sections 2105.18 and 3105.13, Revised Code, the child as an issue of parents whose marriage is annuled in law, is nevertheless legitimate and a court granting either a divorce or an annulment of the marriage shall in no way affect the legitimacy of the children of the parties thereto. This is because the rights of third parties, the children, who are issue of the relationship, intervene. In the instant case both parties were indiscreet, but neither reason nor justice should permit that mutual indiscretion to harm an innocent child. In asking for equitable relief by way of an annulment, the plaintiff must be willing to appeal to the conscience of this Court and come before it with clean hands. The old principle of "He who asks equity must do equity," as well as the sound public policy of this state, require that the Court make a finding relative to the parentage of this child, and if it is found to be the child of the plaintiff, to make orders relative to its custody and support, *Willits* v. *Willits, supra*.

The Court, therefore, will determine in this case the parentage of Lawrence Stephen Abelt. In the interest of jus-

tice, if the plaintiff in this case desires to continue to dispute the question of parentage, the Court will permit him to file a reply denying the parentage of the child, Lawrence Stephen Abelt, and will set that issue down for trial at a future date. After the Court has determined the issue as to parentage of this child, the Court will then enter its final decree granting the annulment and will make such other orders as are appropriate.